# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 10, 2013 Session

# JOHN WESLEY GREEN, INDIVIDUALLY AND AS SHAREHOLDER OF CHAMPS-ELYSEES, INC. v. CHAMPS-ELYSEES, INC. ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 052817-IV      Russell Perkins, Chancellor**

---

**No. M2012-00082-COA-R3-CV - Filed September 11, 2013**

---

Plaintiff raises a plethora of issues on appeal from an action that began as a declaratory judgment action seeking to enforce a sales contract and turned into complex litigation involving numerous claims. On appeal, Plaintiff challenges, *inter alia*, the trial court's decisions regarding the exclusion of evidence pursuant to the Dead Man's Statute, the denial of a motion to amend to add an additional party, issues related to discovery, the trial court's grant of directed verdict on numerous claims to the Defendants, and several other rulings by the trial court. We affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

James D. R. Roberts, Jr. and Janet L. Layman, Nashville, Tennessee, for the appellant, John Wesley Green, Individually and as a shareholder of Champs-Elysees, Inc.

Mark A. Baugh and Nancy Vincent, Nashville, Tennessee, for the appellees, Champs-Elysees, Inc. and Ellen Green, the Personal Representative of the Estate of Mark Green.

Will Parsons, Nashville, Tennessee, for the appellee, Edna L. Green.

Arthur Fourier, Individually and as the Board of Directors and Shareholders of Champ-Elysee, Inc., Auburn, Alabaman, Pro Se.

**OPINION**

This is the third appeal in an action that began as a suit by John Wesley Green against his mother, Edna Green, to enforce a sales contract for her shares in Champs-Elysees, Inc. ("CEI"). On October 27, 2005, John Wesley Green (hereinafter "Plaintiff") and his mother entered into a sales contract for 22,000 shares of stock for the purchase price of $8,000. The day after entering into the contract, Edna Green attempted to rescind the agreement. Thereafter, CEI refused to honor the sales contract. At a November 11, 2005 board meeting of CEI, Plaintiff was removed from his position as President and director of CEI. The remaining directors were Edna Green; Mark Green, Plaintiff's brother; and Art Fourier, who was elected President to succeed Plaintiff.

Three days later, on November 14, 2005, Plaintiff filed this action in the Chancery Court for Davidson County seeking to enforce the sales contract. Edna Green filed a counter-claim seeking to rescind the sales contract. CEI then intervened and filed a counter-claim against Plaintiff for misappropriated funds. Following discovery and upon motions of the parties, the trial court granted summary judgment to Defendants Edna Green and CEI, and a judgment of $46,000 was entered against Plaintiff.

Plaintiff appealed the chancellor's rulings and, on August 26, 2009, the Tennessee Supreme Court reversed the grant of summary judgment to Defendants and remanded the case for a trial on the merits. *See Green v. Green*, 293 S.W.3d 493 (Tenn. 2009).

During the pendency of the appeal, the Sheriff conducted a sale of Plaintiff's stock in CEI to satisfy the $46,000 judgment. Plaintiff sought to quash the sale claiming the stock was exempt property, however, the sale occurred and on December 22, 2006, CEI purchased the stock. Plaintiff then sought to have the sale set aside on the grounds of defects in the conduct of the sale and the failure of the trial court to hold a hearing on the motion prior to the sale's occurrence. The trial court denied Plaintiff's motion to set aside finding that Plaintiff failed to pursue his request for injunctive relief and found the motion to quash was moot. Plaintiff appealed and this court issued an opinion, *Green v. Green*, No. M2007-00591-COA-R3-CV, 2009 WL 3672806 (Tenn. Ct. App. Nov. 4, 2009), in which the court vacated the decision of the trial court on the motion to quash. The court held that on remand, Plaintiff was entitled to seek recovery of the proceeds of the sale but not the shares of the stock.

On remand, Plaintiff filed a Third Amended Complaint for Declaratory Judgment and Other Relief naming as Defendants, Edna Green; the Estate of Mark Green; Art Fourier; and CEI and alleging the following claims: declaratory judgment on the sales contract; tortious interference with a contract; civil conspiracy; collusion; intentional infliction of emotional

distress; negligent infliction of emotional distress; wrongful removal of a corporate officer or director; violation of Tennessee Code Annotated § 48-16-401(c) for inappropriate stockholder distributions; violation of Tennessee Code Annotated § 48-13-304 for personal liability of directors for unlawful distributions and improper distributions to shareholders; violation of Tennessee Code Annotated § 48-18-304 for personal liability of directors for unlawful distributions and payment of Edna Green's attorney's fees from the corporate treasury; breach of fiduciary duty; libel; slander; unpaid wages; breach of contract; violation of the Tennessee Securities Act, Tennessee Code Annotated § 48-1-121, 122; fraud; promissory fraud; and conversion. CEI then filed a counter-claim for conversion of CEI funds.

Although the trial court permitted the filing of Plaintiff's Third Amended Complaint as to the above defendants, the trial court denied Plaintiff's attempt to assert a claim against CEI's attorney, Mark Naftel, upon the finding that the personal tort claims alleged against Naftel were barred by the applicable statute of limitations and the claim against Naftel for alleged unethical conduct was not cognizable under Tennessee law.

An eight day jury trial began on October 31, 2011. During the trial, at the close of Plaintiff's proof, the trial court granted a directed verdict on the following claims: tortious interference with a contract, civil conspiracy, inappropriate stockholder distributions, personal liability for directors, personal liability for the individual defendants for payment of Edna Green's attorney's fees with company funds, breach of fiduciary duties, unpaid wages, the Tennessee Securities Act § 48-1-121, 122, and conversion. The claims sent to the jury were: the declaratory judgment on the sales contract, wrongful removal of an officer or director, violation of Tennessee Code Annotated § 48-18-304 for the personal liability of directors for unlawful distributions and payment of Edna Green's attorney's fees from the corporate treasury, and breach of contract.

The jury's verdict was rendered on November 10, 2011. The jury found Defendant Edna Green breached her contract to sell her 22,000 shares of CEI to Plaintiff, that Edna Green was entitled to $8,000 for the sale of her shares to Plaintiff, and that Plaintiff was entitled to $7,332,92 for damages from the breach of the sales agreement. The jury also found that Plaintiff was improperly removed as President and a member of the CEI Board of Directors, but found that Plaintiff was entitled to no damages as a result, that CEI did not make an unauthorized payment to Edna Green for her attorney's fees in defense of the lawsuit; and that Plaintiff was liable to CEI for converting $46,000 of company funds for his personal benefit, which was to be off-set by $5,499.99 for three shareholder distributions that were made by CEI between December 2005 and February 2006. A final order incorporating the jury verdict was entered on November 21, 2011. Thereafter, Plaintiff filed a timely appeal.

Plaintiff raises numerous issues on appeal. Plaintiff contends the trial court erred in excluding evidence under the Dead Man's Statute, in denying his motion to amend to add Mark Naftel as a party and permit his testimony as a witness, and in various other rulings during the trial. Plaintiff also contends the trial court erred in granting a directed verdict on several of his claims at the close of his proof and in refusing a hearing on his Motion to Quash. We shall address each issue in turn.

## I. Motion to Amend Complaint

Plaintiff contends the trial court erred in denying him permission to add Mark Naftel as an additional defendant. In his motion for leave to file his Third Amended Complaint, Plaintiff attempted to assert claims against Naftel for tortious interference with a contract, conspiracy, collusion, intentional infliction of emotional distress, and negligent infliction of emotional distress against him. The basis for these claims against Mark Naftel were events that occurred at the November 11, 2005 board meeting where Plaintiff was removed as President. The trial court denied Plaintiff's motion to assert the above claims against Naftel on the ground that these claims, which were all personal torts, accrued in 2005 and, thus, were barred by the one-year statute of limitations pursuant to Tennessee Code Annotated § 28-3-104. Plaintiff also attempted to assert a conspiracy claim, which allegedly arose from a December 2009 conversation between Naftel and Plaintiff. Leave to assert the conspiracy claim was denied upon the finding that an essential element was missing, there was no actionable underlying tort.[1]

Whether to grant a Rule 15 Motion to Amend is within the sound discretion of the trial court, and a reviewing court will not reverse such a decision absent an abuse of discretion. *Conley v. Life Care Centers of Am., Inc.*, 236 S.W.3d 713, 723 (Tenn. Ct. App. 2007).

As the trial court properly concluded, the personal torts asserted by Plaintiff accrued upon the conclusion of the November 2005 board meeting when Plaintiff was removed as President and a director. Plaintiff's Third Amended Complaint was not filed until September 2010, almost five years later. As noted in the appellee's brief, Naftel was not a party to this

---

[1]Plaintiff also asserted a claim for "unethical conduct" that allegedly arose from the same 2009 conversation. The trial court held that Plaintiff's allegation of unethical conduct against Mr. Naftel, an attorney, is not a cognizable claim under Tennessee law. *See Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400, 404 (Tenn. 1991); *Akins v. Edmondson*, 207 S.W.3d 300, 307 (Tenn. Ct. App. 2006). Plaintiff, however, contends on appeal that this allegation was merely a description of Mr. Naftel's conduct and that he was not asserting a claim for unethical conduct.

action and Plaintiff had not previously attempted to assert any claims against Mr. Naftel in any of his prior complaints. Although Plaintiff asserts that he did not name Mr. Naftel as a defendant previously because the "known" facts did not support a cause of action, it cannot be disputed that Plaintiff was aware as early as 2005 that Mr. Naftel was present at the November 2005 board meeting.[2]

As for the civil conspiracy claim, which arose from a 2009 conversation between Mr. Naftel and Plaintiff, the trial court correctly noted that Plaintiff did not allege any factual connection between the 2005 conduct at issue in this case and his conversation with Naftel in 2009 that would give rise to an "ongoing conspiracy." The trial court correctly concluded that Plaintiff failed to allege a proper conspiracy claim, which requires an underlying actionable tort and is pled with some degree of specificity. *See Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 179-80 (Tenn. Ct. App. 2007). Further, as the trial court noted, "[a]n actionable conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). The sole basis for the conspiracy claim against Mr. Naftel was the conversation in which Naftel urged Plaintiff to have "compassion" and "forgiveness" for Defendants.

For the foregoing reasons, we affirm the trial court's denial of Plaintiff's motion to amend his complaint to add Mark Naftel as a defendant.

## II. Exclusion of Evidence under Dead Man's Statute

Plaintiff contends the trial court erred by excluding evidence under the Dead Man's Statute. Plaintiff contends the trial court excluded relevant and admissible evidence, specifically, "any reference, mention, testimony, allusion or likeness of Mark A. Green," a defendant in the action who passed away prior to the trial. Defendants contend that Plaintiff has waived this issue by his failure to comply with Tennessee Rule of Appellate Procedure 3(e) by failing to file a timely Motion for New Trial.

Tennessee Rule of Appellate Procedure 3(e) provides that:

> **Initiation of Appeal as of Right.** An appeal as of right to the Supreme Court, Court of Appeals, or Court of Criminal Appeals shall be taken by timely filing a notice of appeal with the clerk of the trial court as provided in rule 4 and by

---

[2]It was only after Mr. Naftel "took a position adverse" to Plaintiff that Plaintiff sought to add him as a defendant.

service of the notice of appeal as provided in rule 5. An appeal as of right may be taken without moving in arrest of judgment, praying for an appeal, entry of an order permitting an appeal or compliance with any other similar procedure. *Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.* Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal but is ground only for such action as the appellate court deems appropriate, which may include dismissal of the appeal. The trial court clerk shall send the trial judge a copy of all notices of appeal.

The trial court entered its Final Order on November 21, 2011. On December 19, 2011, Plaintiff filed a Motion for Findings of Fact and Conclusions of Law and a Motion to Alter or Amend the Final Order. On February 27, 2012, Plaintiff filed a Second Motion to Alter or Amend and Motion for New Trial. In the Motion for New Trial, the only issue that Plaintiff identified was the interaction of *pro se* litigant Edna Green with attorney Susan Bass during the course of the trial.

Tennessee Rule of Civil Procedure 59.02 provides that a motion for new trial shall be filed within 30 days after the judgment has been entered. Plaintiff's motion for new trial was filed outside of the required thirty-day period. Additionally, the untimely motion only identified one issue, which was not the trial court's exclusion of evidence pursuant to the Dead Man's Statute. A party's failure to comply with Tennessee Rule of Appellate Procedure 3(e) by failing to identify the issues for review in a motion for new trial will result in waiver of those issues. Tenn. R. App. 3(e); *see also Hartsell by Upton v. Fort Sanders Reg'l Med. Ctr.*, 905 S.W.2d 944, 950 (Tenn. Ct. App. 1995) (citing *Mason v. Tennessee Farmers Mut. Ins. Co.*, 640 S.W.2d 561 (Tenn. Ct. App. 1982)). Thus, this issue is waived.

### III. Discovery

Decisions regarding discovery issues address themselves to a trial court's discretion. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002) (citing *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992); *Payne v. Ramsey*, 591 S.W.2d 434, 436 (Tenn. 1979); *Harrison v. Greeneville Ready–Mix, Inc.*, 417 S.W.2d 48, 52 (Tenn. 1967)). Thus, the appellate courts must review these decisions using the "abuse of discretion" standard of review. *Id*. Tennessee Rule of Civil Procedure 26.03 provides that "for good cause shown"

a trial court may enter an order denying discovery requests "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Tenn. R. Civ. P. 26.03.

## A. Discovery Submitted in 2006

Plaintiff contends the trial court erred in denying discovery he submitted to Mark Green, Edna Green, Art Fourier, and CEI on July 14, 2006.

In an order entered on August 3, 2011, the trial court denied Plaintiff's motion to compel discovery, which had been submitted five years earlier, in 2006, and the court directed the parties not to issue any additional discovery requests. The court also instructed the parties not to file any motions on discovery issues without leave of the court.

The discovery at issue was served upon the Defendants on July 14, 2006; Defendants apparently did not respond to the discovery. Thereafter, judgment was entered in favor of Defendants on all claims and the case was appealed. Following the appeal, the case was remanded to the trial court. Upon remand, pursuant to an order entered on October 25, 2010, the trial court set the deadline for discovery for March 15, 2011. No party objected to the discovery deadline and, for reasons unexplained by this record, Plaintiff took no action to compel the discovery requested in 2006 until three months after the discovery deadline, that being on June 28, 2011, when Plaintiff filed a motion to deem the 2006 request for admissions as admitted by Defendants. The trial court denied this motion finding that Plaintiff had not sought to compel discovery of the 2006 discovery requests until 2011 and that "no just reason" to continue the trial, which was set for August 2011, or to extend the discovery deadline had been presented.

The discovery at issue was filed in 2006, prior to summary judgment, the appeal to the Tennessee Supreme Court, and remand to the trial court for a new trial. Once remanded, the trial court entered a scheduling order setting a reasonable deadline for discovery. Plaintiff made no attempt to resubmit the discovery sent in 2006 or compel the discovery; instead, he did nothing until long *after* the discovery deadline had passed. We find no abuse of discretion with the trial court's decision.

## B. Discovery of Mark Naftel

Plaintiff also contends the trial court erred in denying discovery requests that he submitted to Mark Naftel and in denying Plaintiff's attempts to call Mr. Naftel as a witness at trial. Following the death of Mark Green, Mr. Naftel represented the Estate of Mark Green in this action.

Plaintiff sought permission to serve interrogatories upon and to depose Mr. Naftel. The trial court denied the requests due in part to the fact that he was not a party and the court had previously denied Plaintiff's attempt to add Mr. Naftel as a defendant. Nevertheless, in its order entered on February 22, 2011, the trial court gave Plaintiff permission to submit ten written questions to Mr. Naftel. In keeping with Plaintiff's practice in these proceedings, Plaintiff delayed submitting the questions to Mr. Naftel until June of 2011, once again, several months after the March 15, 2011 discovery deadline.

Decisions regarding discovery issues address themselves to a trial court's discretion. *Boyd*, 88 S.W.3d at 211. Mr. Naftel was not a party to this action, he was the attorney for a party; nevertheless, he may or may not have had information that was likely to lead to the discovery of admissible evidence. Therefore, the trial court fashioned a reasonable means by which to afford Plaintiff the opportunity to submit ten written questions. Plaintiff failed to do so in a timely fashion and we are unable to conclude the trial court abused its discretion by denying Plaintiff's tardy submission of his ten questions.

Accordingly, we find no error in the trial court's decisions regarding Plaintiff's discovery requests.

## IV. Directed Verdicts

Plaintiff contends the trial court erred in granting a directed verdict in favor of Defendants on his claims of tortious interference with contract, civil conspiracy, inappropriate stockholder distributions, breach of fiduciary duties, unpaid wages, violation of Tennessee Securities Act, Tennessee Code Annotated § 48-1-121, and conversion.[3] Plaintiff also contends the trial court erred in failing to set forth its findings of fact and conclusions of law as to the directed verdict rulings pursuant to Tennessee Rule of Civil Procedure 52.01.

The standard of review on appeal from a motion for a directed verdict does not permit us to weigh the evidence. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992). Moreover, it does not permit us to evaluate the credibility of the witnesses. *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638–39 (Tenn. Ct. App.1993). The standard requires that we review the

---

[3]While Plaintiff initially contends in his brief that he is also challenging the trial court's directed verdict as to the claims of personal liability for directors and the individual defendants for the payment of Edna Green's attorney's fees, the trial court denied a directed verdict on these claims, which were set forth in Count X of the Third Amended Complaint, and thus we assume that Plaintiff's inclusion of this was in error.

evidence in the light most favorable to the motion's opponent, give the opponent the benefit of all reasonable inferences, and disregard all evidence contrary to the opponent's position. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000) (citing *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994)). "We may affirm the motion 'only if, after assessing the evidence according to the foregoing standards, [we] determine[ ] that reasonable minds could not differ as to the conclusions to be drawn from the evidence.'" *Biscan v. Brown*, 160 S.W.3d 462, 470 (Tenn. 2005) (quoting *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002)).

### A.  Motion for Written Findings on Directed Verdicts

Following the conclusion of the jury trial, Plaintiff made a motion asking the trial court to set forth its findings of fact and conclusions of law as to the directed verdict rulings made during the jury trial. The court denied the motion. Plaintiff contends this was error, asserting that findings of fact and conclusions of law are required pursuant to Tennessee Rule of Civil Procedure 52.01.

Tennessee Rule of Civil Procedure 52.01 states:

> *In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.* The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).

(Emphasis added).

It is Plaintiff's contention that a motion for a directed verdict, "by its very nature," is an action tried upon the facts *without a jury* because the facts are not presented to the jury for resolution, therefore, Rule 52.01 applies. We disagree. A motion for directed verdict is made pursuant to Tennessee Rule of Civil Procedure 50.01, which has no requirement that the trial court set forth findings of fact and conclusions of law. Further, by its own terms, Tennessee Rule of Civil Procure 52.01 expressly states that findings of fact and conclusions of law "are *unnecessary* on decisions of motions under Rules 12 or 56 *or any other motion*

except as provided in Rules 41.02 and 65.04(6)."[4] (Emphasis added). Therefore, the trial court was not required to set forth its findings of fact and conclusions of law.

## B. Tortious Interference with Contract

The trial court dismissed Plaintiff's claim against Art Fourier for tortious interference with the sales contract between Plaintiff and Edna Green for her shares of stock in CEI upon the finding that Plaintiff failed to present evidence to support this claim. Plaintiff contends that he established during his proof every element of this claim. Art Fourier, however, contends that Plaintiff failed to establish two essential elements of the claim: that he intended to induce the breach of the contract and that any defendant acted with malice to induce the breach of the contract.

A claim for tortious interference of contract requires a plaintiff allege and establish the following elements:

> (1) that a legal contract existed; (2) that the defendant was aware of the contract; (3) that the defendant intended to induce a breach of that contract; (4) that the defendant acted with malice; (5) that a breach of the contract occurred; (6) that the breach was a proximate result of the defendant's conduct; and (7) that the breach injured the plaintiff.

*Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 405 (Tenn. 2002) (citing *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 822 (Tenn. 1994); *Baker v. Hooper*, 50 S.W.3d 463, 468 (Tenn. Ct. App. 2001)).

As the trial court correctly determined, Plaintiff failed to establish that Art Fourier's actions were the proximate cause of the breach of the sales contract by Edna Green. As the jury concluded, it was established that a valid sales contract existed between Plaintiff and Edna Green; it was also established that Art Fourier was aware of that contract's existence. However, although Plaintiff testified Mrs. Green informed him that her attempted rescission of the contract was based upon the belief that she would have been able to sell the stock for a higher price to Art Fourier, there was no competent proof that Mr. Fourier offered Mrs. Green a higher price for her stock. Therefore, Plaintiff failed to establish that any action by Mr. Fourier was the proximate cause of Edna Green's breach or that Mr. Fourier intended to induce a breach of the sales contract.

---

[4]Rule 52.01 notwithstanding, as amended by order entered January 31, 2002, effective July 1, 2002, Rule 56.04 reads: "The trial court shall state the legal grounds upon which the court denies or grants the [Rule 56] motion, which shall be included in the order reflecting the court's ruling." Tenn. R. Civ. P. 56.04.

Having reviewed the evidence in the light most favorable to Plaintiff, giving Plaintiff the benefit of all reasonable inferences, and disregarding all evidence contrary to Plaintiff's position, we find no error with the trial court's determination that Plaintiff failed to establish the requisite elements of a claim for tortious interference with contract. *Alexander*, 24 S.W.3d at 271 (citing *Eaton*, 891 S.W.2d at 590).

## C. Civil Conspiracy

A claim for civil conspiracy under Tennessee law requires evidence that "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of Am.*, 71 S.W.3d at 703.

The basis for Plaintiff's conspiracy claim is that the three other board members of CEI met and voted to sell Art Fourier 15,000 shares of stock, which resulted in the dilution of Plaintiff's percentage of ownership in CEI. The trial court dismissed Plaintiff's claim for civil conspiracy finding that Plaintiff failed to present evidence to support the claim.

Plaintiff argues he presented proof showing that Defendants engaged in a conspiracy to keep Plaintiff from asserting his majority interest in CEI by diluting the percentage of ownership shares. Plaintiff insists the testimony of Art Fourier was sufficient to establish each prong of his conspiracy claim. Upon our review of the evidence in the light most favorable to Plaintiff, we find, as the trial court did, that Plaintiff failed to present competent evidence of a civil conspiracy in that there was no evidence that two or more board members were acting in concert to conspire against Plaintiff. Mr. Fourier testified that he requested the board's permission to purchase treasury shares, the proceeds of which would benefit CEI, and that he had his attorney prepare a corporate resolution authorizing his purchase of the shares. When questioned whether his "convincing the board to issue additional shares prevented [Plaintiff] from getting controlling interest" in CEI, Mr. Fourier's response was "I dispute that I had the board issue additional shares . . . [t]hese were shares that were in the treasury . . . I asked to buy them." Further, as Defendants state in their briefs, Plaintiff failed to establish in his case-in-chief, and he provided no discussion in the argument section of his brief, nor any legal citations to support an argument that the actions of the board were in furtherance of an unlawful purpose or a lawful purpose by unlawful means.[5] We, therefore, affirm the dismissal of Plaintiff's claim for civil conspiracy on directed verdict.

---

[5]Plaintiff's Third Amended Complaint in the record is missing several pages including pages which ostensibly contain the allegations relating to his claim for civil conspiracy.

-11-

D.  Inappropriate Stockholder Distributions

Plaintiff contends the trial court erred in granting a directed verdict to Defendants on his claims for inappropriate stockholder distributions and personal liability of the directors for the distributions.

Plaintiff alleged stockholder distributions made by CEI between December 2005 and February 2006 were violations of the board of directors' duties; as a result, he contends the directors/Defendants are individually liable pursuant to Tennessee Code Annotated § 48-18-304. Tennessee Code Annotated § 48-16-401(c), which governs stockholder distributions, states:

> (c) No distribution may be made if, after giving it effect:
>
> > (1) The corporation would not be able to pay its debts as they become due in the usual course of business; or
> >
> > (2) The corporation's total assets would be less than the sum of its total liabilities plus (unless the charter permits otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

The evidence presented at trial was that these distributions were made following an investment by Mr. Fourier of approximately $750,000 in the company in 2005. Plaintiff argues that the only means by which CEI would be able to pay its distributions was out of funds "loaned" to the company, which, Plaintiff contends, violates the above referenced statute. Plaintiff, however, does not cite to any evidence in the record to support the assertion that CEI would be unable to pay its debts as they became due in the usual course of business.[6] Although Plaintiff testified that when he was President of CEI he was considering filing a petition for bankruptcy, this evidence however, taken in the light most favorable to Plaintiff, is insufficient to sustain a claim that the distributions made by CEI were inappropriate when they were made in late 2005 and early 2006 following Mr. Fourier's investment in CEI.

---

[6]We note that Plaintiff makes no argument regarding Tennessee Code Annotated § 48-16-401(c)(2).

-12-

For the above reasons, we affirm the grant of a directed verdict on the claims of inappropriate stockholder distributions and personal liability of the directors for the distributions.

## E. Breach of Fiduciary Duties

Plaintiff asserted a claim that Defendants breached their fiduciary duties as directors of CEI as set forth in Tennessee Code Annotated § 48-18-301, which provides:

(a) A director shall discharge all duties as a director, including duties as a member of a committee:

(1) In good faith;
(2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
(3) In a manner the director reasonably believes to be in the best interests of the corporation.

(b) In discharging such duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:

(1) One (1) or more officers or employees of the corporation (or a subsidiary of the corporation) whom the director reasonably believes to be reliable and competent in the matters presented;
(2) Legal counsel, public accountants, or other persons as to matters the director reasonably believes are within the person's professional or expert competence; or
(3) A committee of the board of directors of which the director is not a member, if the director reasonably believes the committee merits confidence.

(c) A director is not acting in good faith if the director has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (b) unwarranted.

Plaintiff asserts that Defendants were not acting in the best interest of the company; instead, they were conspiring to prevent Plaintiff from exercising his rights under the sales contract with Edna Green. Plaintiff contends that Art Fourier's testimony proves that Defendants intended to dilute Plaintiff's share of the company by allowing Fourier to

-13-

purchase 15,000 shares of CEI treasury stock. He also asserts Fourier's loan to CEI and the subsequent distributions to the stockholders were sufficient proof to submit his claim for breach of fiduciary duty to the jury. We cannot agree.

As we have already affirmed the trial court's grant of a directed verdict on Plaintiff's claim for inappropriate stockholder distributions, we hold that Plaintiff's claim for breach of fiduciary duty based upon the stockholder distributions was properly dismissed upon a motion for directed verdict.

Plaintiff claims the directors were not acting in the company's best interest when they removed him as President of CEI. He also contends they were not acting in the company's best interest when they sold an additional 15,000 shares to, as he describes it, dilute his share of ownership of stock and prevent him from having a majority share of the stock. Based upon these assertions, Plaintiff concludes and asserts the directors breached their respective fiduciary duties to the company. The fallacy with these claims, however, is that there is no competent evidence in the record to support a finding that the directors' actions were not in the best interest of the company. There is proof that the actions were not in Plaintiff's best interest, but that does not constitute evidence that these actions were not in the company's best interest. As Art Fourier testified, the directors were concerned with Plaintiff's plan to file a petition for bankruptcy for CEI and their concern that this action was not in the best interest of the company is what motivated Fourier to make an additional investment in CEI and take control of CEI.

Taking the evidence in the light most favorable to Plaintiff, we have concluded that reasonable minds could not differ as to the conclusion that the directors did not breach their fiduciary duties. Therefore, we affirm the trial court's grant of a directed verdict on the breach of fiduciary duties claims.

F.  Unpaid Wages

The trial court directed a verdict in favor of Defendants on Plaintiff's claim for unpaid wages. We affirm this decision because Plaintiff lacked standing to assert a claim for the wages at issue.

 "Standing is a judge-made doctrine by which a court determines whether a party should be permitted to pursue a claim." *Dossett v. City of Kingsport*, 258 S.W.3d 139, 143-144 (Tenn. Ct. App. 2007). "The basis for this decision is whether the plaintiff has alleged a sufficient personal stake in the outcome of the litigation to warrant a judicial intervention." *Id*.

-14-

Plaintiff was an employee of CEI at its inception, however, he voluntarily left the company for a period of time. When he came back to serve as an officer of CEI, it was agreed that Plaintiff would not be an employee of CEI and that he would not receive a salary; instead, it was agreed that his wife, Diane Green, who was an employee of CEI but is not and never has been a party to this action, would receive additional compensation in the amount of the wages that Plaintiff had previously received, and this additional compensation was *her* salary.

In Plaintiff's claim for unpaid wages, he is seeking to recover for himself wages he alleges were not paid to his wife, Diane Green; his claim is not for wages allegedly owed to himself. Whether CEI failed to fully compensate Diane Green is disputed; however, it cannot be disputed that Plaintiff lacks standing to make a claim for the unpaid wages allegedly owed to Diane Green. Thus, we affirm the trial court's directed verdict on this claim.

## G. Tennessee Securities Act

Plaintiff contends that Edna Green asserted Tennessee Code Annotated § 48-1-121 as a right to rescind the sales contract for her shares in CEI and, therefore, he is entitled to recover his attorney's fees under Tennessee Code Annotated § 48-1-122(f) if he prevails on that claim. The trial court granted a directed verdict dismissing Plaintiff's claim for attorney's fees under Tennessee Code Annotated § 48-1-121. In this appeal, Plaintiff contends that decision was error because it was premature. We have concluded that Plaintiff waived this issue on appeal because his brief fails to provide *any* citations to the record regarding this claim.

Tennessee Rule of Appellate Procedure 27(a)(7)(A) provides that a party's argument must contain "citations to the authorities and appropriate references to the record." Our courts have consistently held that failure to provide references to the record in accordance with Rule 27 results in waiver of the issue. *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) (citing *State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994); *State v. Dickerson*, 885 S.W.2d 90, 93 (Tenn. Crim. Ct. App. 1993)).

We, therefore, affirm the grant of a directed verdict on this issue.

## H. Conversion

In this action, Plaintiff asserted a claim for conversion of the proceeds from the "illegal" execution sale of his stock in CEI held on December 22, 2006. This sale was held following the judgment entered against him on summary judgment, which judgment was later

reversed on appeal by the Tennessee Supreme Court. Conversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property. *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (citing *Hanna v. Sheflin*, 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008); *Brandt v. BIB Enters., Ltd.*, 986 S.W.2d 586, 595 (Tenn. Ct. App. 1998); *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977); *Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965)). A cause of action for conversion occurs when the alleged wrongdoer exercises dominion over the funds in "*defiance of the owner's rights.*" *Id*. (citing *Hanna*, 275 S.W.3d at 427 (citing *Mammoth Cave*, 569 S.W.2d at 836)) (emphasis added).

Plaintiff contends the trial court erred in granting a directed verdict on this claim because there was sufficient evidence in the record to support his claim that Defendants converted Plaintiff's stock through an illegal execution sale. Plaintiff contends there was sufficient evidence that he was deprived of his property through the Sheriff, who was acting as CEI's agent, that CEI appropriated the stock to its own use, and that CEI exercised dominion and control over the stock in defiance of Plaintiff's rights as the true owner.

We addressed Plaintiff's contentions regarding the execution sale in our opinion in one of Plaintiff's previous appeals. *See Green v. Green*, No. M2007-00591-COA-R3-CV, 2009 WL 3672806 (Tenn. Ct. App. Nov. 4, 2009). In that matter, Plaintiff appealed the trial court's determination that his motion to quash the execution sale was moot. *Id*. at *1.We held, despite the reversal of the grant of summary judgment upon which the execution sale was based, that Plaintiff would *not* be entitled to recover his stock; this decision was based upon the clear language of Tennessee Code Annotated § 27-6-112. *Id*. at *2. We further held that Plaintiff *ma*y be entitled to seek recovery of *the proceeds* of the sale but not the shares of stock. *Id*. (citing *Orlando Residence Ltd. v. Nashville Lodging Co.*, 104 S.W.3d 848 (Tenn. Ct. App. 2002)). As we further explained, in *Green v. Green*, the determination of whether Plaintiff would be entitled to recover *the proceeds* of the execution sale was dependent upon factual questions relating to the stock at issue, specifically, the validity of the stock issued by CEI. *Id*. As we explained:

> Among the questions for trial in the underlying case will be the validity of the stock issued by Champs-Elysees. The resolution of the issues raised in this appeal by Mr. Green is directly impacted by the validity of the stock claimed as exempt and sold at the execution sale. If the stock was not valid, then Champs-Elysees bought nothing at the execution sale; in that event, our review of issues related to the execution sale would be advisory, at best. If the stock was valid, Mr. Green may be entitled to recover the proceeds of sale but not the shares of stock. *Orlando Residence, Ltd., supra*. To the extent he contends

-16-

that the sale was tainted by "irregularity, misconduct, fraud or unfairness" on the part of Champs-Elysses in connection therewith, the sale price is not conclusive and Mr. Green is entitled to introduce proof in support of his contentions. *Id*., citing *Holt v. Citizens Central Bank*, 688 S.W.2d 414, 416 (Tenn. 1984) and *Duke v. Daniels*, 660 S.W.2d 793 (Tenn. Ct. App. 1983). We are of opinion that any damage Mr. Green claims to have suffered as a result of the execution sale can be appropriately redressed by appropriate amendment to his complaint on remand.

We are not unmindful of the issues in this appeal as articulated by Mr. Green, particularly, those relating to what he characterizes as the "seizure and sale of exempt property" and whether he was deprived a hearing on his claim of exemption prior to the execution sale. Overriding those issues, however, is the question of *what interest Mr. Green had in Champs-Elysees on December 22, 2006, and how that interest was documented in the corporate records*.

*Id*. at *5 (footnote omitted).

Despite the above ruling, we find no evidence and Plaintiff has failed to cite to the record where we might find any that Plaintiff attempted to establish his ownership interest in specific shares allegedly converted by Defendants, or where these shares or shareholder interests were documented in the corporate records. To the contrary, in Plaintiff's brief, he states "the number of shares exempt from seizure and sale remains undetermined."

Because Plaintiff failed to cite to evidence in the record, as required by Tennessee Rule of Appellate Procedure 27(a)(7)(A), to establish that he was the valid owner of an "undetermined" interest that was illegally sold at the execution sale, the issue is waived on appeal. Thus, we affirm the trial court's grant of directed verdict on Plaintiff's claim for conversion.

## V. Default Judgment Against CEI

Plaintiff contends the trial court erred in setting aside the default judgment to Plaintiff on his claims against CEI. Plaintiff sought and received a partial default judgment against CEI on December 1, 2010, following the company's failure to file a response or appear at hearing on his motion for default. The order granting the default judgment provided that a judgment was awarded as to liability, but reserved issues related to the scope of the damages until trial. On October 20, 2011, ten days before the trial in this action, CEI filed a motion to set aside the default judgment, which the trial court initially denied. However, on November 9, 2011, following the close of proof, the trial court decided to set aside the

default judgment against CEI. Plaintiff contends that this caused him extreme prejudice and requests this court reverse for a new trial on all issues related to CEI that were not resolved in his favor. Defendants contend that Plaintiff has waived this issue by his failure to comply with Tennessee Rule of Appellate Procedure 3(e) by including this issue in his motion for new trial, as it was "an action committed or occurring during the trial of the case" or alternatively "ground upon which a new trial is sought." We agree and hold that Plaintiff's failure to include this issue in his motion for new trial constitutes a waiver of this issue. *See Hartsell*, 905 S.W.2d at 950 (citing *Mason*, 640 S.W.2d 561).

## VI. Effective Date of Sales Contract

Plaintiff contends the trial court erred in holding that the effective date of the sales contract, which the jury found was valid and enforceable, was the date of the entry of the final judgment, November 21, 2011, not the date of execution, October 27, 2005. Plaintiff contends that this ruling deprives him of the benefit of his bargain, for example the five years of stock dividends, and unjustly enriches the breaching party, Edna Green. Defendant Edna Green counters by stating that Plaintiff was made whole by the jury's verdict, which awarded him $7,332.92 in damages arising from this breach and the jury awarded him the 22,000 shares of stock pursuant to the contract.

When a plaintiff alleges breach of contract, he or she is responsible for proving "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) *damages caused by the breach of contract.*" *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006) (citations omitted) (emphasis added). In this case, Plaintiff was awarded $7,332.92 in damages for the breach of contract and Plaintiff failed to cite to any evidence in the record that would support an award of damages in excess of that awarded by the jury.

As noted previously, Tennessee Rule of Appellate Procedure 27(a)(7)(A) provides that a party's argument must contain "citations to the authorities and appropriate references to the record," and our courts have consistently held that failure to provide references to the record in accordance with Rule 27 results in waiver of the issue. *Bean*, 40 S.W.3d 52, 55-56 (citing *Schaller*, 975 S.W.2dat 318; *Rampy*, 898 S.W.2d at 210; *Dickerson*, 885 S.W.2d at 93). Plaintiff has, therefore, waived this issue on appeal.

## VII. Fraud on the Court

Plaintiff contends he is entitled to a new trial based upon the "fraud" committed by an attorney, Susan Bass, who represented Defendant Edna Green at trial despite Ms. Green's contention that she was proceeding *pro se*. As with several other issues in this opinion,

Plaintiff has waived this issue due to his failure to include it in his motion for new trial. Tenn. R. App. Proc. 3(e); *Hartsell*, 905 S.W.2d at 950 (citing *Mason*, 640 S.W.2d 561).[7]

## VIII. Court Costs

Plaintiff appeals the trial court's assessment of court costs against him based upon the finding that he did not prevail in this action and that he had "unreasonably multiplied" the proceedings.

The award of discretionary costs is within the trial court's reasonable discretion, *Perdue v. Green Branch Mine Co. Inc.*, 837 S.W.2d 56, 60 (Tenn. 1992), and the abuse of discretion standard does not permit this court to second-guess the lower court's judgment or merely substitute an alternative we prefer. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Therefore, we are to affirm the discretionary decision so long as reasonable legal minds can disagree about its correctness. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). A trial court abuses its discretion only if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence. *Elliott v. Cobb*, 320 S.W.3d 246, 249–50 (Tenn. 2010).

Tennessee Rule of Civil Procedure 54.04(2) states that the trial court may award certain costs, in its discretion, to the prevailing party. These costs are now referred to as discretionary costs. The rule goes on to provide that a prevailing party may recover the following discretionary costs:

> [R]easonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs.

Parties are not automatically entitled to costs under Tennessee Rule of Civil Procedure 54.04(2) simply because they prevail at trial. *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App.1998). When deciding whether to award discretionary costs the equities of the case

---

[7]Plaintiff sought criminal contempt against attorney Susan Bass, however, the trial court dismissed the criminal contempt petition for lack of subject matter jurisdiction, and this court affirmed the dismissal in *Green v. Champs-Elysees*, No. M2012-01352-COA-R3-CV, 2013 WL 1458890, at *4 (Tenn. Ct. App. Apr. 9, 2013), noting that while counsel's conduct may have been unethical it did not rise to the level of criminal contempt.

are to be considered. *Perdue*, 837 S.W.2d at 60. As a general rule, however, the courts should award discretionary costs to a prevailing party if the costs are reasonable and necessary and if the prevailing party has filed a timely and properly supported motion. *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002). When determining whether to award discretionary costs, trial courts are directed to: (1) determine whether the party requesting the costs is the "prevailing party;" (2) limit awards to the costs specifically identified in the rule; (3) determine whether the requested costs are necessary and reasonable; and (4) determine whether the prevailing party has engaged in conduct during the litigation that warrants depriving it of the discretionary costs to which it might otherwise be entitled. *Id.*

In this action, while Plaintiff was the prevailing party on his claim for breach of contract against Edna Green, Plaintiff was unsuccessful as to the vast majority of his claims against the Defendants. Further, the trial court made the specific finding that Plaintiff had "unreasonably multiplied" the proceedings, thus finding that Plaintiff had engaged in conduct during the litigation that would warrant depriving him of the discretionary costs related to any claims on which he was the prevailing party.

Based upon the foregoing, we find no abuse of discretion; therefore, we affirm the assessment of the discretionary costs against Plaintiff.

### IX. Motion to Quash

Lastly, Plaintiff contends the trial court erred in refusing Plaintiff his statutorily guaranteed right to a hearing on his timely filed Motion to Quash. Plaintiff's motion to quash was addressed by this court in *Green v. Green*, which we discussed at length above. While Plaintiff contends his claim for conversion and his claims under the motion to quash are not the same, we find no distinction between the relief that Plaintiff was seeking under either means. Plaintiff contends in his brief that "what if anything was seized by the sheriff, what property was sold, who bought the property, and are they required to return the same are the issue central to the Motion to Quash."

As we held in *Green*, Plaintiff was *not entitled to a return of the stock*, but may have been entitled to proceeds from that sale. Thus, under the law of the case,[8] Plaintiff is barred from asserting that he is entitled to a return of the stock. Further, as we noted under his claim for conversion, there were certain determinations that must be made before it could be

---

[8]"Under the law of the case doctrine, an appellate court's decision on an issue of law becomes binding precedent to be followed in later trials and appeals of the same case involving the same issues and facts." *Ladd by Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996).

determined that Plaintiff was entitled to the proceeds from the sale of the stock. As Plaintiff himself argues in this section, those were not made, and Plaintiff did not establish those at trial below. Therefore, we find any argument that the trial court erred in failing to hold a hearing on the motion to quash without merit.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects and this matter is remanded with costs of appeal assessed against the Appellant, John Wesley Green.

_____
FRANK G. CLEMENT, JR., JUDGE